# THE CHICAGO AND GREAT EASTERN RAILWAY COMPANY
## *v.*
## HARRY FOX *et al.*

1. INSTRUCTIONS — *must be based on the evidence.* It is error to give instructions when there is no evidence on which to base them.

2. NEW TRIAL — *verdict against the evidence.* When there is no evidence to support a verdict, a new trial will be granted.

3. AGENCY — *party dealing with another as agent of a third person, must know his authority.* An agent of a railway company applied to the owner of a dredging and pile driving machine, for an estimate of the cost of certain work the company proposed to have done. The owner of the machine said he would send him a proposition, and did, soon after, send a proposition in writing to the agent of the company, stating the terms upon which the machine could be had. To this proposition no reply was made, but, in about two weeks thereafter, a third person came to the owner of the machine, representing, as the latter alleges, that he came on behalf of the company, and procured the machine and crew belonging thereto, to be sent to do the work spoken of. In point of fact the person who obtained the machine was not an agent of the company but a contractor who had engaged to do the work for the company. It was *held,* the company was not liable to the owner of the machine for the work done therewith; it was his fault that he did not ascertain who was to be responsible.

APPEAL from the Circuit Court of Cook county; the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

The opinion of the court contains a statement of the case.

Mr. E. WALKER, for the appellant.

Messrs. FULLER & SHEPARD, for the appellees.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was an action of assumpsit on the common counts and on an account stated, brought in the Cook Circuit Court, by Harry Fox and William B. Howard against The Chicago and Great Eastern Railway company, and a verdict for plaintiff. A motion for a new trial was overruled and exception

taken. Judgment was rendered on the verdict, to reverse which this appeal is taken.

It appears that plaintiffs were engaged in the business of dredging, pile-driving, etc., when, about October 4, 1865, Mr. Hudson, the assistant superintendent of defendants came to plaintiffs' office to get them to estimate the cost of driving a pile bridge at Mud lake, and also for driving piles for the purpose of extending the abutment across the Illinois and Michigan canal where their road crossed it. The superintendent went with the agent of the plaintiffs to look at the work. The superintendent then asked the agent to give him an estimate for what plaintiffs would do the work, when the agent told him he would give him a proposition on the next day, and on that day he sent the following, which was left at defendants' office :

"CHICAGO, 5th October, 1865.

"CHAS. H. HUDSON, Esq., Asst. Supt. C. and G. E. R. R.: Dear sir, — The work you require to be done at Mud lake and the canal is of such a nature that we prefer to let you have a pile-driver and crew by the day at the rate of fifty dollars; time to reckon from the date the machine leaves until she is returned, you to pay the cost of moving the machine from place to place.                    FOX & HOWARD."

To this proposition, Hudson made no reply.

About two weeks after this, a man, named Vosburgh, came for the pile-driver, saying, he had come from this railroad company, and kept it seventeen days working at Mud lake and the canal, and some extra work was done with it on Sundays.

Plaintiffs' agent was never at the work while it was progressing, but when the work was done, and no one came around to settle for it, he went to the railroad office to get the pay, when he was told that the company had nothing to do with it, as Vosburgh had the contract, and he must pay.

The agent told Hudson that Vosburgh was a stranger to him, and to the plaintiffs, and that they had not looked to him but to the company. Hudson then said the company owed Vos-

burgh, and if the plaintiffs could get an order from him, they would pay it. An order was procured from Vosburgh, but when, is not shown, at any rate, it was not paid by the company, as they had paid Vosburgh before his order was presented, all but one hundred and thirty-nine dollars, and for that amount the company was willing and prepared to accept the order. Hudson had no power to make contracts but to procure estimates for work.

Plaintiffs' proposition of October 5th was never accepted by the company, and they let the work to Vosburgh, who, on his own responsibility, procured the machine from the plaintiffs.

The above is the material part of the evidence, and on it, the plaintiffs asked these instructions, which were given, and exceptions taken by the defendant.

1. "If one sees another doing work for him beneficial in its nature, and has reasons to believe that the party doing the work supposes that he is doing the work for the party who receives the benefit thereof, and by his agent overlooks the work as it progresses, and does not interfere to forbid it, and does no act to undeceive the party so doing the work, the work itself being necessary and useful, and appropriates the work to his own use, he is liable on an implied promise to pay the value of the work, unless an express contract exists in the premises."

2. "Although the jury may believe from the evidence that Vosburgh actually contracted with the Chicago and Great Eastern Railway company to do the work in question, yet, if they further believe from the evidence, that Fox and Howard did the work in question upon the belief honestly entertained on their part that they were doing the same for the Chicago and Great Eastern Railway company, and without any knowledge or reason to suspect or believe that Vosburgh had contracted to do the same, and that they would not have done said work for said Vosburgh himself; and if the jury further believe from the evidence that the Chicago and Great Eastern Railway company knew, before said Fox and Howard com-

menced said work, that, when they so commenced said work, they did so upon the belief aforesaid, and in ignorance of Vosburgh's real connection therewith, and would not have done said work for said Vosburgh himself, and went on and completed it under such misapprehension, and that said railway company did not, before said work was commenced or done, inform said Fox and Howard of the actual state of the case, but purposely permitted them to do the work under the circumstances aforesaid, and then took possession of and enjoyed and are enjoying the benefits of said aforesaid work,—then the plaintiffs are entitled to recover such sum as the jury further believe from the evidence such work was reasonably worth."

The objection to these instructions is very obvious. There is no evidence on which to base them. No such case, as stated in them, was made out by the proof, and it was the fault of plaintiffs, when they let Vosburgh have the machine, that they did not satisfy themselves fully on the point of who was to be responsible. They had warning that their proposition had not been accepted, as two weeks had elapsed and the company had made no reply to it. It was their business to know to whom they were to look, when they permitted Vosburgh to take the machine.

On a careful examination of the record, we cannot find a particle of evidence going to sustain the verdict. At " first blush," the injustice of it is apparent.

There being no evidence to support the verdict, it should have been set aside on defendant's motion, and a new trial awarded.

For refusing to do so, the judgment is reversed and the cause remanded.

*Judgment reversed.*